FILED IN CHAMBERS
U.S.D.C. ROME
Date: Nov 16 2020
JAMES N. HATTEN, Clerk
By: s/Kari Butler
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN, <br><br> Plaintiff <u>pro se</u>, <br><br> v. <br><br> CENLAR FSB *doing business as* Central Loan Administration and Reporting (Cenlar), and Carrington Mortgage Services, LLC, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:20-CV-1410-MLB-WEJ |

## **NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on defendant Carrington Mortgage Services, LLC's ("Carrington") Motion to Dismiss [44].[1] For the reasons set forth below, the undersigned **RECOMMENDS** that Carrington's Motion be **GRANTED**.

---

[1] On July 6, 2020, Cenlar filed a Motion to Dismiss [21]. After briefing by both parties, the undersigned recommended that the Motion be granted in part and that plaintiff's FDCPA and FCRA claims against Cenlar be dismissed. (<u>See</u> R. & R. of Aug. 26, 2020 [32].)

I.  **THE SECOND AMENDED COMPLAINT**

On March 30, 2020, plaintiff filed the initial Complaint [1], which he amended once as of right [13] and amended again on August 26, 2020 with the Court's permission via the Second Amended Complaint [34]. The Second Amended Complaint generally alleges that this action is for "actual, statutory, and punitive damages arising out of and relating to the conduct of [Cenlar and Carrington] . . . in negligently, knowingly/willfully violating the [Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., Telephone Consumer Protection Act, 47 U.S.C. 227 et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641 et seq.]" (Second Am. Compl. ¶ 1.)

In describing the nature of this action, the Second Amended Complaint states that "Plaintiff contends that the Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect an alleged debt." (Second Am. Compl. ¶ 3.) Plaintiff also makes conclusory allegations that defendants "are debt collectors within the meaning of the FDCPA," that "debt collection is part of [their] ordinary business practice," that they "regularly collect[] debts 'owed or due asserted to be owed or due another,'" and that they acquired the debt while in default. (Id. ¶ 10.)

With regard to the actual events upon which plaintiff rests his claims, the Second Amended Complaint recounts a series of written and oral communications between plaintiff and defendants.[2] Plaintiff first alleges that, on April 3, 2019, he received a letter stating that Cenlar had acquired the defaulted loan and that plaintiff should make payments to Cenlar. (Second. Am. Compl. ¶ 11.) In an April 25 letter, Cenlar stated that CitiMortgage was the owner/assignee of the debt and included an address. (Id. ¶ 13.) In a May 14 letter, Cenlar indicated that "another party originated the loan and that the loan is registered in MERS" but was "not recorded or assigned in the county of records however it is reflected in MERS." (Id. ¶ 14.) In an October 24 phone call, a Cenlar representative told plaintiff that it took over the loan when it was delinquent and in default. (Id. ¶ 17.)

On April 1, 2020, plaintiff called Cenlar and requested a forbearance. (Second Am. Compl. ¶ 27.) On April 13, plaintiff received an email from Cenlar confirming his enrollment in the forbearance program. (Id. ¶ 28.) On April 21,

---

[2] The undersigned only states the alleged facts relevant to claims against Carrington and, therefore, necessary for the Court to rule on the instant Motion.

3

plaintiff received a letter from Cenlar stating that the debt was sold to Carrington. (Id. ¶ 29.)

On May 5, 2020, plaintiff received an initial letter from Carrington stating that his mortgage was sold to it by Cenlar. (Second Am. Compl. ¶ 36.) The letter did not correctly state the amount of the debt, the name of the creditor, or any other verifying information. (Id.) On that day, plaintiff sent Carrington a letter requesting a validation of the debt and referenced "FDCPA 15 U.S.C. 1692g." (Id. ¶ 37.) The letter also stated that Carrington was a furnisher of information and was required to inform the credit reporting agencies that the debt was in dispute. (Id.)

Plaintiff sent two additional letters to Carrington on May 5, 2020. (Second Am. Compl. ¶ 37.) Those letters referenced "15 U.S.C. §§ 1601-1667j and U.C.C.-Article §3-501(b)(2)(1)." (Id.) The Second Amended Complaint alleges that "[p]laintiff sent in a qualified written request to inspect the original note or any agreements that he had a duty [to] pay [Carrington]." (Id.)

Plaintiff's letters to Carrington included the following statement: "all communications **must be done** by US mail only." (Second Am. Compl. ¶ 37.) Plaintiff alleges that Carrington has not answered him or validated the debt. (Id. ¶¶ 37-38.) Shortly after sending the letters, plaintiff began to receive letters from

Carrington demanding full payment of the debt along with the forbearance portion agreed to with Cenlar. (Id. ¶ 39, first sentence.)

On May 18, 2020, plaintiff received another letter from Carrington stating a transfer of service had occurred. (Second Am. Compl. ¶ 39, second sentence.)[3] The letter included the following statement: "This communication is from a debt collector and it is for the purposes of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collections Practices Act." (Id.)

The Second Amended Complaint alleges FDCPA and TILA claims against Carrington in Counts I and IV, respectively. (Second Am. Compl. ¶¶ 40-50, 57-58.) Count I alleges that Carrington is a debt collector as defined by the FDCPA, that "debt collection is part of its ordinary business practice," that it "regularly collects debts on behalf of others," and that it "collected this debt as a third party agency while it was in default." (Id. ¶ 42.) Plaintiff alleges that Carrington violated § 1692c(c) by continuing to send harassing letters after receiving his cease and desist letter and that it knew or should have known that its letters and

---

[3] The Second Amended Complaint labels three paragraphs as 39. Accordingly the Court refers to them as the first, second, and third sentences of that paragraph number. (See Second Am. Compl. at 11.)

phone calls were inconvenient to plaintiff. (Id. ¶ 44.) Plaintiff alleges that Carrington violated § 1692e(10) by using false and deceptive means to collect or attempt to collect the debt or to obtain information concerning him. (Id. ¶ 45.) Likewise, plaintiff contends that Carrington violated § 1692e(8) by communicating or threating to communicate false credit information, including failure to communicate that the debt is disputed. (Id. ¶ 46.) Plaintiff contends that Carrington violated § 1692f by using an unfair or unconscionable means to collect or attempt to collect the debt and violated § 1692g by failing to validate the debt. (Id. ¶¶ 47-48.) Finally, plaintiff alleges that Carrington violated § 1692e(11) by failing to disclose in its initial written communication and subsequent communications that it was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose, and violated § 1692f(6) by threatening to unlawfully repossess or disable his property. (Id. ¶¶ 49-50.)

Count IV incorporates by reference all of the pleadings' earlier paragraphs and simply alleges that "[a] new creditor or assignee must provide notice of its status pursuant to 15 U.S.C. §1641(g)." (Second Am. Compl. ¶¶ 57-58.) Plaintiff then quotes subsection (1) of that statute as follows:

6

> In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including –
>
> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;
>
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>
> (D) the location of the place where transfer of ownership of the debt is recorded; and
>
> (E) any other relevant information regarding the new creditor.

(Id. ¶ 58.)  Finally, in his Prayer for Relief, plaintiff seeks statutory, compensatory, and punitive damages.  (Id. at 15.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff.  Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).  Although a court is required to accept well-pleaded facts as true and make reasonable

7

inferences in favor of the plaintiff, it is not required to accept the plaintiff's legal conclusions or unwarranted deductions of fact. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005) (per curiam).

A court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." Chandler, 695 F.3d at 1199 (internal quotation marks and citation omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), the Supreme Court stated that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations and footnote omitted).

Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The mere

8

possibility that the defendant might have acted unlawfully is insufficient to allow a claim to survive a motion to dismiss.  Id.  Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  However, the factual allegations in a complaint can be sufficient to survive a motion to dismiss even though recovery may be remote or unlikely.  Id. at 555-56.  As long as the facts alleged create a reasonable expectation that discovery will reveal evidence of the necessary elements, the plaintiff's suit should continue.  Id. at 556.

### III. DISCUSSION

In its Motion to Dismiss, Carrington argues that plaintiff has failed to state a claim against it under the FDCPA (Count I) and the TILA (Count IV).  (See Def.'s Mot. 5-10.)  Plaintiff has responded [47].  Therefore, this Motion is ripe for resolution and the undersigned addresses each claim in turn below.

#### A. FDCPA Claim (Count I)

By enacting the FDCPA, Congress sought "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  Brown v. Budget Rent-A-Car Sys., Inc., 119

F.3d 922, 924 (11th Cir. 1997) (per curiam) (quoting 15 U.S.C. § 1692(e)). To establish a claim under the FDCPA, a plaintiff must demonstrate that: (1) he was the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA ; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir. 2010) (per curiam).

Carrington argues that plaintiff's FDCPA claim fails because he did not allege any facts to support his conclusory allegations that it is a debt collector as defined by the FDCPA. (Def.'s Mot. 5-9.) Carrington also argues that the only plausible inference that can be drawn from plaintiff's allegations is that it sent him routine statements of account concerning his mortgage after Cenlar transferred the loan servicing rights to Carrington. (Id. at 8.) In his response, plaintiff fails to address Carrington's argument that he did not plead sufficient facts to establish that it is subject to the FDCPA. (See generally Pl.' Resp.)

The undersigned addressed Count I's fatal deficiency in an August 26, 2020 Non-Final Report and Recommendation analyzing Cenlar's similar argument that plaintiff's FDCPA claim must be dismissed. (See R. & R. of Aug. 26, 2020 (recommending Cenlar's Motion to Dismiss be granted as to plaintiff's FDCPA claim).) As previously discussed, plaintiff's recitation of the FDCPA's

10

definition of debt collector is unavailing and cannot salvage his conclusory allegations that Carrington is subject to the Act. See Cyrus v. Wells Fargo Bank, N.A., No. 1:12-CV-1156-TWT-LTW, 2013 WL 869398, at *4 (N.D. Ga. Feb. 7, 2013), R. & R. adopted, 2013 WL 870075 (N.D. Ga. Mar. 7, 2013) ("Reciting the statutory definition without offering any facts in support is insufficient to plausibly allege that [d]efendants meet the definition of debt collectors, such that the FDCPA applies to them.")

Likewise, plaintiff's contention that the debt was acquired in default is equally insufficient to plausibly establish that Carrington is a debt collector. See Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1316 (11th Cir. 2015) ("[A] person who does not otherwise meet the requirements of § 1692a(6) is not a 'debt collector' under the FDCPA, even where the consumer's debt was in default at the time the person acquired it."). Finally, Carrington's reference to itself as a debt collector in the letters is insufficient to establish that it meets the statutory definition set forth in the FDCPA. See Fenello v. Bank of Am., NA, 577 F. App'x 899, 902 (11th Cir. 2014) (per curiam) ("An entity cannot transform itself into a debt collector within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act.").

11

Therefore, without facts to support his allegations that Carrington meets the FDCPA's definition of debt collector, Count I is patently deficient and fails to state a claim. Moreover, despite multiple attempts, plaintiff has failed to plead facts establishing that the principal purpose of Carrington's business is debt collection; thus, further amendment appears futile. Accordingly, the undersigned **RECOMMENDS** that Count I be dismissed against Carrington as well.

### B.   TILA Claim (Count IV)

Carrington argues that plaintiff's TILA claim fails because he alleges that it is his mortgage loan servicer, but TILA only imposes a duty on creditors (not loan servicers). (Def.'s Mot. 9-10.) Plaintiff responds that Carrington "referred to itself as being transferred the servicing rights from Defendant Cenlar" in its April 21, 2020 letter and argues that it is unclear if Carrington is the servicer or is the owner of the debt. (Pl. Resp. 5.) Plaintiff argues that Carrington cannot avoid liability under TILA by "transform[ing] itself into a loan servicer, by simply noting in a letter that it may be considered one under the Act." (Id.) Plaintiff complains that it is unclear what role Carrington plays in its attempt to collect the debt and that Carrington has not provided any facts to support that it is merely a loan servicer or that a valid transfer of the loan even took place. (Id. at 5-6.) Plaintiff also argues that Carrington failed to respond to his qualified written

request or properly notify plaintiff as to "who they are i.e., 'their status'" and thus is subject to TILA. (Id. at 6.)

Here, Count IV simply incorporates by reference the earlier paragraphs of the Second Amended Complaint and restates § 1641(g) of the TILA. (See Second Am. Compl. ¶¶ 57-58.) As the Supreme Court explained in Twombly, a formulaic recitation of the elements of a claim is insufficient to raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. Moreover, plaintiff's incorporation of the Second Amended Complaint's earlier paragraphs into Count IV is characteristic of an inappropriate shotgun pleading, rather than a plausible claim. See Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam) (identifying complaint as a shotgun pleading where each count incorporates by reference the allegations made in previous sections).

Furthermore, if Carrington is the loan servicer, it cannot be held liable for violations of § 1641 unless it "is or was the owner of the obligation." See 15 U.S.C. § 1641(f). In an attempt to avoid dismissal of Count IV, plaintiff argues that he does not know Carrington's role with regard to the debt and hypothesizes that it could be the owner. (Pl.'s Br. 5-6.) However, the Second Amended Complaint pleads no facts to that effect and plaintiff cannot amend a claim via his response brief. See Gilmour v. Gates McDonald & Co., 382 F.3d 1312, 1315

13

(11th Cir. 2004) (per curiam) (plaintiff may not amend complaint through argument in opposition brief). Likewise, Count IV contains no factual content. Therefore, plaintiff's TILA claim lacks facial plausibility. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

As set forth supra Part II, the mere possibility that the defendant might have acted unlawfully is insufficient to allow a claim to survive a motion to dismiss. Iqbal, 556 U.S. at 678. Moreover, it does not appear that a fourth amendment to his pleading would yield a viable claim against Carrington. Accordingly, because plaintiff has failed to state a plausible claim for relief against Carrington under the TILA, the undersigned **RECOMMENDS** that Count IV be **DISMISSED**.

IV. **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant Carrington's Motion to Dismiss [44] be **GRANTED**, that plaintiff's FDCPA claim (Count I) and TILA claim (Count IV) be **DISMISSED**, and that Carrington be dismissed from this case. Furthermore, given that that plaintiff has proffered three pleadings and has yet to allege a viable claim against Carrington,

the undersigned **REPORTS** that further amendment appears futile. See <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (court need not grant leave to amend where amendment would be futile).

**SO RECOMMENDED**, this 16th day of November, 2020.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE